Case number 21-5040, Katrina L. Webster, appellant, v. Carlos Del Toro, Secretary of Navy. Mr. Clovers, amicus garyi for the appellant. Mr. Hare, for the appellant. Counsel, amicus for appellant, please proceed. Thank you, your honor. May it please the court. There are two errors in this case. First, the district court applied the incorrect legal standard when dismissing Mrs. Webster's complaint below. For failure to, quote, clearly enumerate her argument and for failing to, quote, reference the relevant EEO complaint number in either count of the complaint. That is not the requirement this court set under Web versus U.S. Veterans Initiative, under which, quote, courts must consider a pro se plaintiff's complaint in light of all filings before dismissing for failing to state a claim. Had the district court looked at all filings, including her opposition to the motion to dismiss, it would have found ample evidence of a reprisal by disclosure claim, including at JA 6 and JA 13 in the complaint, JA 89, 91, and 93 in the opposition to the motion to dismiss. Second, the Navy asked this court to compound the error by any alternative ruling that Mrs. Webster failed to exhaust her administrative remedies. That argument is waived, as I've discussed in the brief, because they first say it was, they first raise it in the motion for summary affirmance as arguably less than fully exhausted. And then in concluding, they asked this court to disregard Mrs. Webster's arguments on the issue because it was not part of the district court's decision. And therefore, they were seeking affirmance only for the reasons the district court gave. They don't need to put all of their arguments in a summary affirmance motion. No, but in this case, it's not forfeiture of a waiver. They've directed the court's attention to the issue, and then they've asked you to disregard it. Even if not waived, though, if you were to look at the merits of that claim, you would find that Mrs. Webster has satisfied both conditions. So at the time that she filed in the federal district court on March 2nd, the EEO decision of February 14th was final. And the Navy did not file their motion for reconsideration until two weeks later on March 16th. So on March 2nd, the EEO decision was final, and under 29 CFR 1614.407, she had 90 days to file, which she did. Two requirements that are relevant here. One is the statutory requirement that the exhaustion has to be done for the employing agency, not the EEOC. And another is the regulatory requirement of issue preservation. EEOC regs says that the administrative complaint has to generally describe the actions or practices that form the basis of the complaint. So why doesn't that combination establish preservation issue exhaustion requirement before the Navy? The Supreme Court has said and we've said exhaustion means proper exhaustion, which means raising issues as required by the governing regs. Your Honor, she did so. Where did she raise this claim, retaliation by disclosure to the deputy before the Navy? She raised it on March 20th in her informal complaint on April 11th, and then again in her interview on September 24th. And this is all evident from the Navy's report of investigation, which is Exhibit 5 to the motion for summary reversal, in which the Navy says that its investigation covered, quote, reprisal for prior EEO activity. And that was reprisal related to the disclosure of her EEO activity, too, you mean? That's correct. And if it's not clear, that's because the Navy had no interest in investigating the issue. There were several times that Mrs. Webster tried to bring it to their attention, and the Navy kept trying to characterize it as something else. But the EEOC characterized it as something the EEOC was raising sui sponte, a claim that she wasn't pressing in the administrative appeal. They did say that, but that's inconsistent with the record. That's, sorry? Inconsistent with the record. Okay. We assume that the disclosure to you mean was materially adverse. Where in the complaint do we find that you've led any kind of Iqbal Twombly specificity plausibility that the disclosure to you mean was caused by her previous EEO? Your Honor, I think it's actually clearest as to Garland, if I may go there. So as to Garland, she pleads the disclosure to him as well. It's most clear in her opposition to the motion to dismiss. And a JA-91 and 93, she says that it was done for the purpose of dissuading her from EEO activity. JA-91 and 93, I think, are not part of the complaint, unless I'm misremembering. That's correct, Your Honor.  Yes, and under Webb, the district court should have considered all the pleadings in the case before dismissal. But the only claim, I thought the only claim still open in the case involved the disclosure to the lieutenant. Is that what you mean? I don't think that's right, Your Honor, at least based on the briefing. I think she says generally reprisal by disclosure. And then in the opposition to the motion to dismiss, she provides further detail. There's really at least two disclosures. So there's disclosure to Yameen on which there's disputed evidence of whether or not he's a manager. There's the disclosure to Garland on which there's no dispute that he is not a manager. And then there is also a Mathis declaration that she submitted along with her complaint, which says that there were general rumors circulating, which suggests that the disclosure was not limited to those two. Well, I'll look at Garland when I review this. But the two retaliation theories I remember by disclosure, one was disclosure to the coworkers. And then it's chatter that they view her as trouble and that's a problem. And that's no longer in the case. And the other is the disclosure to Lieutenant Yameen. So you think there's a third one disclosure to Garland that we need to deal with? That's right. That's right. So Garland is the one who said she is trouble. But what was dismissed below was some of the actions that he took, but not the piece of coworker or a supervisor. He is not a supervisor. He's a contractor. Right. As to Yameen, suppose the attorney general learns of an EEO issue like this, someone he deals with in the course of his duties. And he goes to his chief of staff and discloses the EEO activity and asks for advice, how should we deal with this? And the chief of staff is not in the chain of command of that person. Would that be an unlawful disclosure? In this case, since it's for the purpose of legal advice, I would say no. If that's all you knew, you wouldn't think that's unlawful, right? Correct. Not for the purpose of legal advice. Okay. So why isn't this case more like that than like the case where the retaliator puts it on the intranet and everyone in the company knows this person is trouble? That's right. So I think the Navy, at brief, describes the case Moghanam v. Napolitano from this court, in which they say a broadcast situation would be unlawful. In the circumstances of that case, the broadcast to a bunch of coworkers who have no management or business reason for knowing that. That's right. And I think the facts here are closer to that than a single private conversation. In so far as we have a disclosure to Yameen, we have a disclosure to Garland, and we have general rumors. Well, but Yameen – so just focus on Yameen. I mean, Yameen is sort of – the Navy says he is Crowley's, I don't know, deputy lieutenant, close aide to Crowley, and you say Yameen is not in the chain of command, in Webster's chain of command. I say the evidence is disputed, Your Honor. That's right. The EEOC says that before the EEOC, the Navy agreed that he was not in the chain of command. I think there's contrary evidence as well, and so on that record, it's better to remand and let the district court. Are there no further questions, Your Honor? I do have one. Oh. Let's assume that all of the facts that you've pled are correct. What was her injury? Well, the injury was both pecuniary in the sense that she was not promoted and therefore received a lower salary. I think there was also injury just in the process for which the Navy has resisted investigating, which is precisely why she's ended up in federal court. You know, she's been in this administrative quagmire now for five years without even getting a clear declaration from Garland that is signed and dated. So part of what she's seeking is the vindication of her rights to an investigation. Thank you, Your Honor. All right. Counsel for the Navy. Yes, good morning. May it please the court. Christopher here for the Secretary of the Navy. We ask that you affirm the district court's dismissal of Miss Webster's remaining claim for two reasons. First, disclosing someone's prior protected activity without more is not against the law. This Webster's complaint alleges that her supervisor, Captain Patrick Crawley, unlawfully disclosed her protected activity to another manager in her branch, Lieutenant Tariq Yameen. It says no more than that. Her complaint in opposition to the government's motion to dismiss do not clarify this claim any further. Rather, Webster speculates that Captain Crawley may have disclosed her protected activity to another employee, Mr. Richard Garland, an IT contractor who worked at the help desk. Even assuming the truth of Miss Webster's well-pled allegations, she fails to state a plausible claim of retaliation. The disclosure to another manager or even to another employee would not dissuade a reasonable worker like Miss Webster from making a charge of discrimination. As my friend on the other side just discussed, Miss Webster claims that she was not promoted in over 21 years. But that claim is implausible, where she does not allege that she applied for any specific promotion as required by this court's precedent in Blatham v. Snow. And Mr. Garland. Are the promotion claims live? No, Your Honor. Well, I believe, Your Honor, that the promotion claim deals with the hostile work environment. Because if you look at her pre-complaint counseling, which Amicus is pointing to. Is the hostile environment claim live? That is not. I thought through some combination of race judicata and the special panel's order in this case. The only live issue is the theory of retaliation by disclosure to you mean. Precisely, Your Honor. And I think Miss Webster has been fully heard on that issue and it is no longer a live claim in this case. So there's a disconnect, a clear disconnect between the awful disclosure claim and a claim that would have something more to do with non-promotion. And that makes sense. Mr. Garland is an IT contractor, certainly wasn't in charge of any promotions. And the I believe the reason that Miss Webster had pointed to in her pre-complaint counseling with the EEO counselor had to do with the types of hostilities that she was experiencing or the statements from her co-worker. And as I just noted, that claim is no longer live in this case. So I believe what is being suggested here is something akin to a strict liability regime whereby an employee could inflict liability on an employer by the mere utterance of prior protected activity, seemingly for any reason. And as we know in our race, confidentiality is often a good idea and that is generally required through the EEO investigation process. But there are many legitimate, non-retaliatory reasons for a supervisor to discuss protected activity with another employee. And just to kind of clarify for the record, the issue of whether or not Lieutenant Yameen was her supervisor, he did not author Miss Webster's performance appraisal. He was the branch deputy and therefore would supervise her work and maybe assign her work, but was not directly responsible for, you know. What do we know about the relationship between Crowley and Yameen? Is it like my hypothetical of a principal officer and a chief of staff or a principal deputy or something like that? I don't think it's that intimate, Your Honor. It's admittedly not in the record exactly what their working relationship was. But they're all working in the same environment as managers, as you know, maybe leading different groups or subgroups within the office. And the captain, Captain Crowley, was the superior. And they would both, so Miss Webster worked as Captain Crowley's executive assistant. But as those types of roles, as the court might appreciate, have broadened over the years, Miss Webster's services may be utilized elsewhere in that office, including by the branch deputy, Lieutenant Yameen. The second issue, Your Honor, if I could move on to exhaustion, her EEO complaint, which she never amended, did not raise any retaliation by disclosure claim. And we do not find any evidence in the record or joint appendix to show that the Navy investigated as such. As we note in our briefs, knowledge of prior protected activity is but one element that the Navy may have considered when investigating Mr. Garland's conduct. And there were statements alleged in the EEO complaint, which was specifically focused to the exclusion of Captain Crowley, as we know, on Mr. Garland's conduct. That in order to be retaliatory would have to bear some knowledge to the prior protected activity. But that was not the underlying claim. And for that reason, the Navy had no reason to go and investigate it during its process. Let me ask you, as I understand Amicus's point, maybe as a technical matter, if you look at specific allegations, you will find this retaliation. But if you look at all of the pro se filings, you will. So what I'd like to understand is what is the government's position on how much leeway this court is required to accord to a pro se litigant? Yes, Your Honor. I think as a pro se litigant, Ms. Webster is entitled to every reasonable inference based on the factual allegations. First, I'll point out that there is a significant disconnect between an allegation of disclosure by Lieutenant Yameen and then in the opposition to the government's motion to dismiss, which is talking about an entirely separate issue, which is whether or not Mr. Garland had knowledge, and if so, where from. So off the bat, we're kind of talking about apples and oranges here. We're not talking about, from your point of view, the pro se's point of view. Just a series of incidents here that stood in her way one way or another. And while she may not have mentioned everything as you would hope a lawyer would, nevertheless, the Navy knew what was up. This is not a surprise that she's complaining. So I get your point about, contrary to what Amicus was arguing, well, you know, the Navy did investigate the sort of surrounding circumstances. But your position is that is just an incorrect statement or an incorrect reading or interpretation of the Navy's investigation? I believe it is an incorrect sort of characterization of what issues the Navy was investigating here. And, you know, I think that that also gets to the fact that the complaint itself, as Judge Katz has just asked about, was related to a hostile work environment claim. And that claim made sense. Ms. Wester was experiencing maybe statements that she interpreted to be unkind and would lend itself to some support of a potential hostile work environment. But as we pointed out in our brief, this is not the case where a manager was broadcasting a complaint and doing other things that we can glean from the papers, even giving her every inference in her favor and assuming the facts of any factual matter, where we can discern that that was the type of claim, a retaliation by disclosure type claim, that she was attempting to bring here. I understand that that disclosure by broadcasting, but I'm not sure I understand that to be the sine qua non for a hostile environment and an adequately alleged hostile environment claim. In other words, that's one way to argue, you know, the employer is liable, but that's not the only way. No, Your Honor, I think there would be a number of additional facts that a plaintiff might allege to nudge this over the line of plausibility. Our position is simply that given what we have in the complaint and even given some of the speculation that we have in the opposition to motion to dismiss, we're not making out the plausible either broadcast claim, which I understand is its own type of claim that we don't discern here. Or any other type of discrete act of retaliation, which is the Supreme Court noted in Morgan is quite different than a hostile work environment claim. So I think you're right, Your Honor, there may be some background information or some context that we ought to consider when looking at the complaint. But here we don't have that factual material. And if I could just note, there were some portions of the joint appendix that Amicus pointed to regarding the rumor bill, let's say, at the office. Those rumors and affidavits that Amicus cites to are from back in 2005 and 2006. And the complainant issue that we're talking about here deals with the 2017 timeframe. But further, I mean, I don't think that shows plausibility anymore. And in fact, I think if there's a rumor mill going on that long ago, well before Captain Crawley joined the office, I might add, it does not show that there is a sieve of information, so to speak, about protected activity and knowledge thereof within the office. Her administrative complaint does allege retaliatory disclosures, at least in general, as relevant to hostile environment. Correct? I think we would dispute that, Your Honor. What the complaint actually says is… The administrative complaint. The administrative complaint, correct. And the one that was accepted for the investigation talks about the conduct from Mr. Garland that Ms. Webster deemed to be retaliatory in some way, that he was, I believe, the complaint is critical of her prior protected activity. As I stated before, and as we stated in our briefs, it would have to have some nexus to prior protected activity. But the fact that he was critical in and of itself doesn't lend itself to a disclosure claim, much less one that, you know, bring forth enough facts to put the Navy on notice that there was such a claim. I think I'll ask Amicus a question that I meant to ask earlier, but I want to give you a heads up since you won't have a chance to then speak after Amicus. If I Google Katrina Webster Navy discrimination, there's hit after hit after hit of court filings regarding her EEO activity. It's not that there's, you know, people, it's just court filings, public record. Is the most narrow way for us to decide this case to say there's no disclosure of private information when it's already public information? I believe that would be a rather narrow way, Your Honor. And, you know, as the district court said that it could not glean a retaliation by disclosure claim here. But if there's evidence in the record to suggest that her prior protected activity was well known in the office and there's no factual assertion in the complaint or otherwise, that would show that that knowledge was somehow propagated by Miss Wester's management, much less Captain Crawley. If there are no further questions, we ask the court to affirm. I just asked counsel, so I'm clear. You are at you are responding to Judge Walker's question, but there's a cause in your answer that I'm not sure I understand. What is your response to at least what I understood to be the implication of Judge Walker's question, namely that this woman has been working there a long time and she's been dissatisfied for a number of reasons that sometimes, you know, it's the rumor mill and other times it's something else, but it's just going on and she's not getting what she considers to be her due satisfaction. And isn't it enough to sort of be somewhat vague about this where you're a pro se litigant and I hear you saying well there may be some leeway do, but I'm not so much leeway that the Navy has to speculate as to the specific allegations underlying the complaint at issue here. Am I characterizing your response. I do believe you are correctly characterizing my response to honor we are we are asked to speculate here, which has problems both at the exhaustion level to put the Navy on notice and give us a fair chance to investigate. And then it also assessing the sufficiency of the complaint doesn't allow us to nudge this claim into the realm of plausible. But for those reasons, we're, we're asking the court to affirm. Your Honor just briefly two things. First of all, having heard opposing counsel's argument, I think, although opposing a council seems to agree in principle that pro se litigants are do additional deference and you should look at all meetings. That's not in fact the argument. The argument seems to be that we should construe every inference against her as evidence that it is somehow ambiguous. And second, as to the point about Google, I think all that shows is, as Roger said, that Mrs Webster has been here for a while and has had several problems in the course of her employment. And also that as the EEOC found the Navy does not take its confidential obligations serious. And so, of course, in the course of previous EEO investigations, they've been disclosing potentially all sorts of things. I don't know. This is like a cert petition that her husband wrote regarding her EEO claims. It's not. These are court files. No, but the EEOC found that the Navy does not protect the confidentiality of any of its investigations. And so to the extent that opposing counsel's pointing to a 2015 or 2016 affidavit and saying that has nothing to do with our case, it does to the extent it demonstrates the Navy was not interested in confidentiality in 2015 or 2017. If no further questions, I'll defer to reversal and remand. Thank you.
judges: Rogers, Katsas, Walker